My name is Steve Richard. I represent Mr. Perry. Mr. Perry comes before the court seeking to have his 10-year mandatory minimum penalty arising from a guilty plea to a drug trafficking offense reversed on the grounds that the judge, the sentencing court, erred in not allowing him the safety vow. And the focus I want to take now would be the court when it sentenced, and we had a hearing when it sentenced Mr. Perry, denied him the safety vow because the court found a credible threat of violence. The court did so using a reasonable person or reasonable, I guess reasonable person standard. But what he actually did is he took, he found that the words spoken were threatening, just the words themselves, and then from there looked at the, in this case, the victim or the confidential informant, and subjectively said, okay, that person was straightened, and that's enough now to deny the safety vow because that becomes a credible threat. I suggest that the way the statute is worded, that the threat of violence or violence, excuse me, you have to have more than simply say the words and have someone interpret those words. Well, let's suppose you're right, that there is a subjective element that he didn't apply. Then what do we do? Why don't we just look at the record and say, but it really doesn't matter because he obviously intended it to be. I mean, it's the middle of a drug deal. He had every reason to want to frighten the person. He certainly didn't sound like he was joking. He wasn't making a political statement, as in many of the cases. So why would we have any doubt that he intended whatever he was saying? In the context of this factual situation, I don't think there's anything other than the words being said. Well, yes, there is. There's the fact that he had 40 guns in his house, and the fact that it was the middle of a drug deal, and the fact that this woman had known him for a very long time and therefore presumably knew he had 40 guns in the house or at least some guns in the house. In fact, those guns weren't in the place where this transaction took place. The guns were in a house somewhat removed from the public. He didn't say he was going to kill her right then and there. Pardon me? He didn't say he was going to kill her right then and there. He just said, if you're putting me on, I'll kill you. Well, the objective factor that goes against that is, one, he continued to deal with her. Two, he never really searched her, which he could have easily done, right? He actually threatens to do that. Says he. But he didn't do it. And they continued to deal. So there are objective factors both ways. But even assuming, objectively, the facts could be read to support the finding of district court, and I think they could. But it seems to me under the case law, there's also a subjective requirement that, you know, they're subjectively intended to make a threat. That is, the defendant. And the district court never really addressed that. Not at all. At all, right? In other words, I think the wording of the guideline itself is purely objective. So that may have, you know, maybe misled the district court, so to speak. But he didn't pay any attention to the Supreme Court case law that says, well, under the First Amendment, there still has to be a subjective element. And I precisely think there ought to be some either subjective, I really mean this, and the court didn't go into that. The court actually just said the words were said, and the victim felt that was it. So is the remedy a remand for the district court to make the finding, is that what you're asking? Yes. And why can't we do that on our own? In other words, what would the district court be able to do that we couldn't do by looking at the record ourselves, or listening to the record, as the case may be? Probably either. You're right. I think this court could do that, although I'm suggesting there should be a different standard imposed, and had a different standard been used. Yes. No, I'm assuming that we were to agree that there's a subjective element, and it's clear that the district court did it from a purely objective, reasonable person approach. A remand would have him go back and look again all at the context, drug deal, et cetera, et cetera, et cetera, the points that Judge Tashima made, and then conclude whether he, the district court, could find by what, a preponderance of the evidence that there was a subjective intent? Yes. Okay. All right. And the one thing that does trouble me when I first got into this was it's a little strange talking about the First Amendment in the context of a sentencing of someone who has been convicted of a criminal offense. And then the question is whether, in the nature of the way he carried out that criminal offense, whether he did so in a threatening manner that created the fear of harm and the like. And do you think there's a straight-across translation of the First Amendment jurisprudence into the sentencing context? Or is there some contextual distinction, or what? I'm suggesting that there is a direct transfer. Well, in terms of Booker issues, well, there are Booker issues, first of all, but I gather that no one's arguing that the jury should have made this determination. No, I think the case law forecloses that. All right. So because it's a mandatory minimum, it doesn't matter, that's all. Right. But then the – but what about the burden of proof? Where's the burden of proof? That's on the defendant. Because it's an exception? Yes. So it's not that the judge has to find that there was subjective intent. It's not that the judge has to decide whether the defendant proved that there wasn't a subjective intent. Or does the First Amendment context change that? I don't think so, because I think in that suggestion, his – the court would be still looking to see what the intent was and whether or not it's proven or not. We don't know. He used the standard that I suggested. Yeah, but I couldn't well make a difference, you know, where the burden is on this. If it's the defendant who has to prove that he didn't have a subjective intent, that would make it, you know, it seems to me more possible that we could – there wouldn't necessarily be a need for a remand. So the question is, which is it? Ordinarily, the burden's on the defendant, I guess, because it's an exception. But then if you really think the First Amendment is plugged in here, then maybe that isn't so. Well, I do think the First Amendment is. So have you taken a position on where the burden is at this point? Did your brief take a position on it? It did not. If I understand the question correctly, do we have the burden to show that our First Amendment rights were violated? No. Do you have the burden to – well, more specifically, do you have the burden to show that there was not a subjective intent? We have to show by preponderance that we qualify for the safety value. Right. Exception. Okay. You want to save some time? Yes. Okay. May it please the Court, Counsel. My name's Michael Fica. I'm here on behalf of the United States. I, like Mr. Richard, was attorney of record during the trial proceedings in this matter. Your Honor, let me address first, I think, an important factor, I think, that pertains to a question that was asked of Mr. Richard. Because I think at the risk of belaboring some facts, I think there's an important fact that needs to be – Before you get to the fact, is it the government's position that the First Amendment does or doesn't apply in this context? Your Honor, it's the government's position that the First Amendment does not apply. Does not. And the reason is this, Your Honor. As the Court discussed with Mr. Richard, the citations that Mr. Richard raised in his brief pertain to criminalization of speech. And I think that's the bridge that Mr. Richard has problems making here. This does not deal with criminalization of speech. Mr. Richard's client seeks relief from the mandatory minimums. The case law is clear on that, that the burden falls to him. It's not a criminalization matter. It's a matter of relief from sentencing. Can you cite a case that says sort of, like the general criminal law doesn't apply in this safety goal context? Your Honor, not specific to this context, I can't. I could find no authority. What I could find was that the authority was clear that the burden is on the defense in this context. Well, he doesn't dispute that, but I'm talking about whether or not the First Amendment applies at all. I'm sensing. I cannot. The only thing I would suggest, Your Honor, is as I, in my brief, I analogized it to essentially arguing that there'd be a second, given recent developments in law, I don't know, maybe this isn't the strongest argument in the world, but there'd be a second amendment argument that could be raised in a possession of firearms case, say if we were here because there was a sentencing enhancement for possession of a firearm. Well, that doesn't make any sense because in that instance, you know, it either is or, the criminalization itself isn't a problem. Possession of a firearm for a felon isn't a problem, so enhancing it isn't a problem either. But suppose this wasn't an exception problem. Suppose it was a sentencing enhancement under the guidelines. And suppose we took Booker off the table. So it was an actual enhancement. And we know that under the apprentice line of cases, if you are simply increasing a sentence that is subject to at least the Fifth and Sixth Amendment protections, why wouldn't it be subject to the First Amendment as well? In other words, if you were enhancing, literally enhancing the sentence on this basis. It would be a wholly different matter. I agree, Your Honor. So in other words, your context isn't that it's the crime, the definition of the crime, but it's that because of the mandatory minimum context is what you're saying. Correct, Your Honor, exactly. And it's a relief that the defendant seeks from the mandatory minimum. In other words, the defendant comes before the bar and says to the court, the presumption under the statute, under the criminalized statute, that being 841, 21 U.S. Code 841, is you committed this crime. You are faced with a 10-year mandatory minimum. The defendant comes before the bar and invokes essentially the safety values as well. It's hard for me to see why that makes a difference. But suppose one of the conditions of the exception was that you, you know, not have given a political speech in the last year. You couldn't remove the First Amendment from that context, right? Correct. So why should this be different? Because I think, Your Honor, well, the point is good, and I guess the argument I was about to make is it goes to the type of speech, which I guess sort of counters my initial point. But I still think it bears the point in this case. It's the defense seeking the relief. But what's the ultimate advantage of drawing these fine lines between whether it's an enhancement or an exception if the idea is that the criminal law should not be used in such a fashion to attack the content or chill the content of speech, than whether it's seeking relief from the mandatory minimum or it's an enhancement. The concept is still there. It just may all of this may make it much more difficult for the defendant to get any mileage out of it. But I'm having trouble seeing where the principal distinction is in terms of the ultimate notion of not chilling ordinary speech. And, Your Honor, to that I would say, again, I revert back to the fact that this case is not really criminalization of speech. I understand that. And so in that sense the defendant isn't being criminalized. But it wouldn't be criminalizing speech and enhancement either, basically. But it's an enhancement above and beyond a proven set of criminal activity. That's absolutely correct. And I guess to maybe split the difference, I would suggest that if we were just talking about an enhancement, I'd still suggest that it wouldn't be criminalization. If we went down the Apprendi line of cases, or should I say the Booker line of cases, to the area wherein the court would find, if the court had found that this essentially would be a jury finding, now maybe we're starting to tread into those waters. If I could, though, Your Honor, I'm sorry. Let's just say one thing. I don't find the way you're trying to distinguish this very convincing. But there's another line that I wonder about, which is as to whether the full First Amendment analysis applies. And that is that the statute says that it has to be a credible threat of violence in connection with the offense. And here, whatever it was, it was essentially part of the offense. Correct. Right? It was happening right there while the offense was going on. And I'm wondering whether that makes any difference in terms of the level of scrutiny under the First Amendment. I don't think so, Your Honor. I think it doesn't make a difference at all. You had a fact issue. I did. And really, it cuts, with the Court's permission, it cuts I think what is really my core argument, and with my time remaining, I would suggest that, Your Honors, that no matter what burden is applied in this case, there wasn't error. And I have two points I want to make. One is a fact point. The context in which this statement is made is significant. It wasn't just a drug deal. There was a series of parts of a conversation, and it's important the context that this threat came up. Ms. Boyce had gone in and asked Mr. Perry about him meeting a friend of hers who was an undercover officer. They talked about that for a minute. Then Mr. Perry asked Ms. Boyce to smoke some methamphetamine with him. The officer testified to the District Court, and I would note that defense presented no evidence to the District Court. This was unrefuted. The officer testified that, in his experience, that that was a common way to ferret out people that may be working for the cops. And what's significant, Your Honor, is immediately after Ms. Boyce said no, it was then that Mr. Perry threatened Ms. Boyce. And I think that's significant because it goes right to Mr. Perry's intent, regardless of what standard applies. Why is that any different? I mean, why is that not just like, you know, the joking statement? You know, if I tell you this, I'll have to shoot you. Well, and I think that's exactly because, again, regardless of what standard applies, if it's made in the context to dissuade a person from further action, and I'd suggest that even if it was made in a joking way, Mr. Perry's point, even if he said it laughingly, was to dissuade her. He didn't know whether she was working with the cops that day or not. Mr. Feige, assuming you're correct, and, you know, I think you are that the evidence could support a finding that, you know, meets the first of my requirements that he had a subject intent, the problem is the District Court never addressed that issue, right? He just addressed it all, you know, Judge Windmill, in terms of, you know, the objective reasonable person standard. Well, I disagree somewhat, Your Honor. I think that Judge Windmill identified that he believed that the reasonable person standard applied, but Judge Windmill did make some comments that suggest that he even considered Mr. Perry's intent. Noting from the record, he says... Give me a page here. Certainly, Your Honors. I'm citing to page 83 of the transcript. It's on page 31 of the excerpt of record. Go ahead. And page 83, starting at line 7, Judge Windmill said, I think anyone over the age of 12, certainly when over the age of 18, who says, I'm going to kill you, and this is the important stanza, particularly under these circumstances, I think would cause someone to think that they probably meant it or they wouldn't say it. Well, first of all, I must say that that was a part of his analysis that I thought was really extremely questionable, and the fact that many people over the age of 18 routinely say, I'm going to kill you, when they don't mean they're going to kill you. So it's not very persuasive. I see my time's up. May I respond, Your Honors? If I could analogize, because I was thinking about this in the context of, and I don't mean to be glib, if the Court will forgive me, I was thinking about this in the context of a movie that I recently saw. In that movie- That's where we get all our information. I understand that, Your Honor. In that movie- Can we have a citation to that? I'd be happy to, Your Honor.  pulled him aside and kind of laughingly said, if you touch my sister, I'm going to kill you. And they kind of, ha, ha, ha, and he said, no, I'm serious. Ha, ha, ha, ha, ha. And the scene from the movie left you thinking, is he serious or isn't he? And I think that goes to the core point. Even if Mr. Perry said it in a joking, light-hearted way- No, but the core point that we're trying to get at is that Judge Windmill didn't make a conclusion about whether he meant it. And what you just read, it seems to me, if it is a conclusion, is a conclusion that we couldn't possibly uphold if his reasoning was simply that grown-ups don't say this if they don't mean it, because that's not true. Well, if I, again, over if I may- You can answer this one, but we'll have to move on. Thank you, Your Honor. Citing just a few short lines further down in the record, again, same page 83, line 21, Judge Windmill says, Well, the way this case comes before me gives me some pause. I don't see how I can make any finding except that the defendant made a credible threat of violence by telling Ms. Boyce that if she was wearing a wire, he would kill her. This is the important line. Clearly, the intent was to dissuade her from cooperating with the police. And I think that clearly would indicate it was done in conjunction with the drug trafficking offense for that reason. So in conclusion, Your Honors, I would suggest that Judge Windmill, again, these were the facts he had before him. The defense presented no evidence. Got it. Thank you very much. Counsel, you have some rebuttal time. I'll be very brief. And just to follow up on, the government suggests that this isn't a criminalization of a speech because it's not a crime. It's a safety vial application. But here it's the speech that causes the penalty here to more than double. So I really do think that. Criminal consequences. It has penal consequences. Yes. All right. Got that. So I think the First Amendment has to apply. And in this context, I think when you have a statute that will disqualify the safety valve if you use violence, and it also says if there's a threat of credible violence, that that also can disqualify you. I think there has to be more than you said the words in this context, and that's not. Can the court nonetheless look to the reaction of the CI as part of its evaluation of what the subjective intent was? I think that could suggest what the intent could have been. Yes. All right. Thank you. Thank you both. Can I ask one question? Go ahead. What is your reading of the portion of the transcript that the government quoted as showing, you know, that the court did make a finding that Mr. Perry had this intent subjectively? Right? You just read to us a little bit of this. I don't think the court even got there because I don't think he was looking at anything other than how the person reacted under these circumstances. But he said clearly the intent was to dissuade her from cooperating with the police, and I think that clearly would indicate it was done in conjunction with a drug trafficking offense for that reason. So why isn't that good enough? Because he didn't ever really look at what the intent was. He just said he did. He drew the inference, I think, simply by the reaction by the confidential informant. But that isn't what he said. Well, I think we'll have to resolve. Thank you. We get a chance to reflect on that. Thank you. We take your argument. Thank you, gentlemen, both. It was a good argument. And the case is submitted.
judges: Tashima, Fisher, Berzon